(31 Misc. Rep. 486.)

## In re BRIGGS.

(Surrogate's Court, Otsego County. May, 1900.)

1. EXECUTORS AND ADMINISTRATORS—ACCOUNTING—EVIDENCE.

In a proceeding to charge a son, as administrator, with a sum which it is claimed he owed to his deceased parent for money received by him on a certificate of deposit indorsed to him by her during her life, one who had been indebted to decedent testified that he had given to decedent's daughter a certificate of deposit for $1,000. The daughter testified that the mother indorsed and delivered the certificate to the son, and that the latter executed to the mother a receipt therefor, which receipt was also placed in evidence. The son denied that he received the certificate or that he executed the receipt. The daughter testified that after the mother's death she had a talk with her brother about some money he was owing his mother's estate, and that he did not deny owing her. It appeared, however, that he owed his mother $500 on a note which his mother had transferred to the daughter, but of which transfer he had no knowledge at the time of the conversation. The daughter testified that no sum was mentioned in the conversation. A cousin testified that she was present at the conversation, and that the sum of $1,000 was mentioned. An expert testified that the signature to the receipt was the administrator's. The bank which issued the certificate of deposit, though but a short distance from the place of trial, was not called on to produce the certificate of deposit, and no reason was given for its nonproduction. *Held* insufficient to charge the administrator with the receipt of the $1,000.

2. SAME—COSTS.

Where an administrator of the estate of a deceased person, though no assets of the decedent came to his hands, for several years failed to file an account, he may be charged personally with the costs of a contest of his account filed after a petition for a compulsory accounting had been filed, though he was successful in the contest.

Judicial accounting by Albert O. Briggs, as administrator of Mary Briggs, deceased. Accounts allowed.

R. M. Townsend, for contestants.
Gibbs & Wilbur, for administrator.

ARNOLD, S. Mary Briggs died on the 10th day of December, 1892. Letters of administration upon her estate were issued to Albert O. Briggs in December, 1893. Up to September 20, 1895, no steps were taken along the course of administration. Upon that date a petition was filed asking for a compulsory accounting. Upon the return of the citation issued upon that petition, the administrator came into court, and asked leave to file his petition for a voluntary accounting, together with his accounts. Thereupon the proceedings were consolidated. Objections were filed by the contestants to the account. By the account filed it would appear that no assets belonging to the estate ever came into the hands of the administrator. The contestants claimed by their objections that the ad-

ministrator should be charged with the sum of $1,000, and interest thereon from May 1, 1888. Owing to a very bad practice prevailing in this county, the parties occupied four years in submitting to the court the testimony arising upon this contest. The case was finally submitted for decision in February, 1900. The evidence upon the point at issue is most unsatisfactory. The decedent was the mother of the present administrator. It is claimed upon the part of the contestants that on the 1st day of May, 1888, the son received from his mother a certificate of deposit for $1,000; that upon that day he executed and delivered to his mother a receipt, of which the following is a copy:

"Laurens, May 1, 1888.

"recd of Mary Briggs check for $1000 to be returned in a one thousand dollar Mortgage　　　　　　　　　　　　　　　　　　A O Briggs"

It is further claimed upon the part of the contestants that no part of this money was ever returned, and that no mortgage was ever given, as agreed in the terms of said receipt. The administrator denies that he ever received personally or as administrator the sum of $1,000, or any part thereof. To sustain the contention of the contestants, one Berosus Cook was called, who testified that on or about the date of the receipt he was owing to Mary Briggs the sum of $1,000; that he paid the same to her at her house by delivering a certificate of deposit for that amount to her daughter Statira Lent; that said certificate was issued by one of the Oneonta banks. Statira Lent testified that this certificate of deposit was given by her mother to her brother, Albert O. Briggs; that at the time said certificate was delivered to him he executed and delivered the receipt, a copy of which is set forth above. Witness testifies that this was done in her presence. She further testifies that after the death of her mother she had a talk with her brother at his house about some money that he was owing his mother's estate. It appears from her testimony that the administrator had owed his mother $500, which was evidenced by a note held by the mother. This note had been transferred to Statira Lent, but it does not appear that at the time of the conversation between the brother and sister as to which she testifies he knew that she held the note. So that it does not appear from her testimony whether the conversation described by her related to the $500 or to the $1,000 now sought to be charged against the administrator. Mary Starr, a cousin of the parties, testified on behalf of the contestants that she was present at the time of the conversation between the brother and sister, and that he acknowledged at that time that he had the $1,000 from his mother. This witness was very clear upon this point, and she was very clear that the conversation took place during the winter following the mother's death. She fixes the time by saying that it was while a notice was being published in the public press that a petition had been filed and a citation issued for letters of administration upon the estate of Mary Briggs. The witness is clearly wrong about the time, as the petition for letters of administration was not filed until about a year after the death of Mary Briggs. Mrs. Lent testifies that no sum was mentioned in the conversation at any time. Mrs.

Starr testifies that the sum of $1,000 was mentioned. The testimony of both of these witnesses is that Mr. Briggs acknowledged that he had received the amount; that he stated that he did not want it, and was entirely willing to give it over to Mrs. Lent, but that he did not want the other parties interested in the estate to have it. About the only evidence of any importance on the part of the contestants, aside from that above referred to, is the testimony of the handwriting expert. He very decidedly expressed the opinion that the receipt referred to was in the handwriting of the administrator. This opinion was based upon a comparison of the disputed handwriting with certain standards in the case.

I will briefly state my impressions received from the evidence on the part of the contestants: There are two banks in Oneonta. Each is within 100 yards of the place where the testimony in this case was taken. It is alleged that the certificate of deposit referred to was issued by one of these banks. The very best evidence in the world would have been this certificate of deposit. It should have been a most easy matter to have obtained it, and had it in evidence in this case. If it was received by the administrator, it probably has his indorsement upon the back. The failure to produce this certificate in evidence is a matter to be considered most seriously in disposing of this case, considering the evidence which is offered by the administrator. Not only was it not produced, but no reason is given or suggested as to why it was not produced. It was the duty of the contestants to produce it. The testimony of Mrs. Lent and Mrs. Starr, under all the circumstances, is not sufficient to sustain a finding charging this administrator.

We then come to the consideration of the receipt. The intestate died at the house of her son A. O. Briggs. This receipt is produced in court by the contestants. No evidence is offered as to where, how, or when it was obtained. So far as the record shows, it simply presents itself. The standards in evidence were all written with pen and ink. The receipt is evidently written with an indelible ink pencil. While there are strong resemblances between the handwriting in the receipt and the handwriting in the standards, yet, after a careful examination, I am compelled to find that the receipt is not in the handwriting of Albert O. Briggs. In the receipt the word "dollars" is interlined and is spelled correctly; in each of the standards submitted the word "dollars" is spelled with one "l." The signature to the receipt is entirely different in its characteristics from the signature in the standards submitted. The letter "A" is of an entirely different construction. While in all the standards submitted the signature is carefully punctuated, there is no punctuation whatever in the signature to the receipt. Upon the part of the contestants no testimony is submitted as to the genuineness of this receipt, except the testimony of the handwriting expert. I have gone over his testimony carefully. I have examined the disputed handwriting carefully, and my impressions are entirely different from his. On the part of the administrator the testimony of several witnesses is submitted who have known the handwriting of the administrator for many years. Each one gives it as his opinion that the disputed

handwriting is not the handwriting of A. O. Briggs. Viewing the testimony of the contestants as I do, it is not necessary to here review the testimony on the part of the administrator.

The accounts of the administrator are allowed and settled as filed. Mr. Briggs asked to have letters of administration granted to him. It was his duty to have a settlement of his accounts. It was a duty which he owed to the court appointing him, to his bondsmen, and to those who might be interested in the estate. He did nothing; he has been very dilatory in this accounting. Under the circumstances, he is charged personally with the costs of this proceeding. Findings may be prepared according to the views above expressed, and a decree entered accordingly.

Decreed accordingly.